United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KRISTINA M. KARKANEN,**<br>Plaintiff**,**<br>vs.<br>**STATE OF CALIFORNIA, ET AL.,**<br>Defendants**.** | CASE NO. 17-cv-06967-YGR<br><br>**ORDER DISMISSING OPERATIVE COMPLAINT; DENYING RENEWED REQUEST FOR LEGAL COUNSEL**<br><br>Re: Dkt. Nos. 21, 23 |

Plaintiff Kristina M. Karkanen is representing herself *pro se*. The Court previously dismissed plaintiff's first amended complaint with leave to amend and denied plaintiff's various requests for legal counsel. (Dkt. Nos. 11, 14, 17, 19.) Plaintiff has now filed a "Third Amended Complaint" (Dkt. No. 21 ("Operative Complaint" or "OC"))[1] and a renewed request for legal counsel as an accommodation for her disability (Dkt. No. 23 ("Request")). For the reasons stated herein, the Court **DISMISSES** the OC without leave to amend and **DENIES** plaintiff's renewed request for legal counsel.

**I.  FACTUAL BACKGROUND AS ALLEGED**

For purposes of reviewing the sufficiency of the OC, the Court treats all allegations therein as true.

Plaintiff "suffers from Fibromyalgia and severe Complex Post Traumatic Stress Disorder ['C-PTSD']." (OC ¶ 30.) The events that led to this lawsuit arise largely from plaintiff's dissolution proceedings against her ex-husband, Craig Molaug, and the discrimination plaintiff alleges she experienced in the family court proceedings that followed.

---

[1] The OC is actually plaintiff's *second* amended complaint, despite the title of the pleading.

On December 15, 2009, plaintiff obtained a dissolution by agreement from the Superior Court of the State of California, County of Contra Costa. (*Id.* ¶ 33.) However, plaintiff alleges that "[i]n 2008, [she] became a litigant in the Superior Court of California, Contra Costa County which continues to this day." (*Id.* ¶ 34.)

During this time, "[p]laintiff attempted to utilize the family court forum to assert her rights pertaining to custody and other domestic relation matters." (*Id.* ¶ 35.) However, plaintiff alleges, "[r]ather than accommodate [p]laintiff's disabilities and allow her to participate in an equal manner with a meaningful opportunity to participate in and benefit from the litigation processes in California Court proceedings, the Court and its officials and employees and agents, berated and ignored [p]laintiff for attempting to utilize the litigation process and assert her rights in family court." (*Id.* ¶ 36.)

Plaintiff reported incidents of child sexual and physical abuse and exposure to domestic violence regarding her daughter, "J.K.," in 2012 and 2013. (*Id.* ¶ 37.) Plaintiff alleges that the evidence she submitted was ignored by various defendants and that she was subsequently labeled as having a "mental illness," as reflected in the "family court record." (*Id.*)

In 2013, defendant Reese and defendant Laughlin, who was Molaug's attorney, forced plaintiff into a mental health evaluation as part of a custody assessment. (*Id.* ¶¶ 49, 53.) The evaluation was performed by defendant Braunstein, who plaintiff did not trust. (*Id.*) The court ordered plaintiff to pay approximately $11,000 for the cost of the evaluator. (*Id.* ¶ 53.)

Defendant Braunstein's written reports regarding plaintiff's mental health were discussed in open court, and used against her to "interfere with her parental rights." (*Id.* ¶ 56; *see also id.* ¶ 44.) Plaintiff's attorneys also discussed her disabilities and mental health in open court between March 2014 and February 2015. (*Id.* ¶ 43.)

Due to the label of "mental illness," the court was generally biased against plaintiff, and plaintiff was not "offered" reasonable accommodations during the pendency of the family court proceedings. (*Id.* ¶¶ 40–42.) Due to the lack of accommodations, plaintiff was fined for being unable to participate in the court mediation program. (*Id.* ¶ 46.)

Because they "regard[ed] [plaintiff] as having mental illness," defendants Paulsen, Reese,

and Judge Jill C. Fannin removed J.K. from plaintiff's custody and "effectively terminated [plaintiff's] parental rights" in December 2013. (*Id.* ¶¶ 57, 137.) Molaug was subsequently awarded custody of J.K. (*Id.* ¶ 136.)

On December 6, 2017, plaintiff filed this lawsuit against nineteen defendants, seeking relief under (1) Titles II and III of the Americans with Disabilities Act ("ADA"), and (2) Section 504 of the Rehabilitation Act. (Dkt. No. 1.) After the case was reassigned to the undersigned, plaintiff filed her first amended complaint, this time against twenty-three defendants, again seeking relief under the same sections. (Dkt. No. 9.) Reviewing the first amended complaint under 28 U.S.C. section 1915(e), the Court dismissed the complaint with leave to amend, noting that the defendants included a "host of state and local actors and individuals" (Dkt. No. 11 at 2) and that "Karkanen fail[ed] to connect her complaints regarding the custody proceedings to any legal right of action against each of the named defendants." (*Id.* at 3.) The Court also cautioned that "Karkanen cannot represent her child as she is not an attorney nor has she been appointed guardian *ad litem*." (*Id.*) The Court denied plaintiff's motion for legal counsel and advised plaintiff that assistance may be available by making an appointment with the Legal Help Center. (*Id.* at 4–5.)

On April 9, 2018, plaintiff filed the OC, which adds three new claims for relief, namely civil harassment, violation of the Health Insurance Portability and Accountability Act ("HIPAA"), and "Sex Discrimination Violations of State Constitution." (OC at ECF pp. 13–15, 23–30.) Plaintiff seeks damages in the amount of $2,000,000, civil penalties, and declaratory and injunctive relief. (*Id.* at ECF p. 31.) Plaintiff sues twenty-four defendants, which, for purposes of clarity, the Court characterizes generally as follows:

- <u>State and County Officials</u>: State of California; California Attorney General Xavier Becerra; State of California Judicial Branch; Chief Justice of the California Supreme Court Tani Cantil-Sakauye; County of Contra Costa

- <u>Local Government Agencies and Employees</u>: Newark Unified School District; Director of Special Education Jennifer Willis; Superintendent Patrick Sanchez; Assistant Superintendent of Human Resources Oliver Wong Ah Sun

- <u>Local Judges and State Court Department Employees</u>: Superior Court of California;

3

Judge Jill C. Fannin of the Superior Court of Contra Costa County; Family Court Mediator Tish Reese; Social Worker and Administrator of Family Court Services James Paulsen

- <u>Attorneys</u>: Three attorneys; three law firms

- <u>Health Professionals</u>: Dr. Elizabeth Braunstein, Psy.D.

- <u>Visitation Supervisors</u>: Child Visitation Supervisor Neoma K. Gottlieb; Watchful Eye Supervision

- <u>Professional Associations and Non-Profit Organizations</u>: Association of Family and Conciliation Courts ("AFCC"); California Chapter of the AFCC

## II. LEGAL STANDARD

28 U.S.C. section 1915(e)(2)(B) requires the Court to "dismiss the case at any time if the court determines that – . . . the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For purposes of section 1915, a frivolous claim is one that lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] In evaluating whether a complaint states a claim for relief, a court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must do more than allege "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (internal alteration and quotation marks omitted).

In the Ninth Circuit, courts "construe *pro se* filings liberally when evaluating them under [*Iqbal*]. While the standard is higher, our 'obligation' remains, 'where the petition is *pro se*,

---

[2] "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).

4

1  particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, a court will not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The district court must provide the *pro se* plaintiff notice of the deficiencies of his or her complaint prior to dismissal, but a *pro se* plaintiff must still allege facts sufficient to allow the reviewing court to conclude a claim has been stated. *Ferdik v. Bonzelet*, 963 F.3d 1258, 1261 (9th Cir. 1992); *see also Noll v. Carlson*, 809 F.2d 1446, 1449 (9th Cir. 1987) ("[W]hen dismissing a pro se complaint for failure to state a claim, district courts need draft only a few sentences explaining the deficiencies."), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).

**III.    DISCUSSION**

### A.    Plaintiff's Operative Complaint

In amending the complaint for the second time, plaintiff has provided more detail regarding the events she is challenging as unlawful and which defendants are alleged to have committed the acts. However, it is now apparent that the OC fails to state a claim. Plaintiff has failed to describe any connection between (i) what happened to her and (ii) the relief provided by the laws under which she is suing. Where plaintiff has added facts, those facts now show there is no legally cognizable claim, that is, the law does not provide the Court with the power to grant the relief which plaintiff seeks.

The OC also suffers from six additional categories of defects as set forth below.

#### 1.    Underlying Facts of the Operative Complaint

First, plaintiff has not connected any of the facts that underlie her alleged claims to civil harassment or violations of disability or sex discrimination laws by the specific defendants noted. As a consequence, while her OC provides more detail, the assertions are too conclusory. For example, plaintiff alleges the following:

- "Because Judge Jill C. Fannin, Tish Reese, James Paulsen and Elizabeth Braunstein regarded Plaintiff as having a 'mental illness,' the court was biased against her, and

5

Defendants did not offer accommodations or reasonable modifications." (OC ¶ 40.)[3]

- "Defendants Jill C. Fannin, Tish Reese, James Paulsen, Stephen Nash, Magda Lopez, Neoma K. Gottlieb, Paula Grohs and Elizabeth Braunstein stereotyped and stigmatized Plaintiff and repeatedly acted on assumptions about Plaintiff's 'mental illness.'" (*Id*. ¶ 45.)

- "Defendants perpetuated the use of the 'mental illness' label to prejudice Plaintiff since September 2013, and regarded Plaintiff as having a 'mental illness'; neglecting to consider information available on Plaintiff's actual disabilities." (*Id*. ¶ 48.)

- "Defendants deliberately added to the severity of Plaintiff's disabilities . . . ." (*Id*. ¶ 50.)

- "Court Evaluator Dr. Elizabeth Braunstein interrogated and berated Plaintiff and her minor child, discriminating against Plaintiff for her disability. (*Id*. ¶ 55.)

- "Defendants Paulsen, Reese and Judge Jill Fannin removed Plaintiff's child J.K. from her custody and effectively terminated her parental rights based on regarding her as having 'mental illness' and the sex-stereotype of that 'mental impairment'; regarding her as having mental illness and based on Plaintiff's fibromyalgia, C-PTSD and assumptions about this psychiatric injury." (*Id*. ¶ 57.)

- "The State of California and its agencies are inaccessible to Plaintiff." (*Id*. ¶ 61.)

- "Defendants exploited Plaintiff's disabilities . . . with the purpose to retaliate and give preferential treatment to Craig Molaug, J.K's father during and after custody litigation." (*Id*. ¶ 68.)

- "Defendants have subjected Plaintiff to an ongoing mental war zone from 2013 – present." (*Id*. ¶ 87.)

- "As a result of Defendants' egregious acts that failed to provide reasonable modifications or accommodations so that Plaintiff could equally access court proceedings, Plaintiff's and J.K.'s relationship was irreparably harmed." (*Id*. ¶ 88.)

- "The assessment of [plaintiff's] 'mental illness' is based upon stereotypical assumptions of [her] disability." (*Id*. ¶ 96.)

- "Defendants improperly utilized criteria or methods of administration that had the effect of subjecting Plaintiff to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendants' services, programs, and activities with respect to Plaintiffs

---

[3] For example, not only does plaintiff fail to describe how *each* of these defendants exhibited "bias." She fails to identify any accommodation or reasonable modification which was provided by law and then denied by the defendants.

with disabilities . . . ." (*Id.* ¶ 99.)

- "Defendants Jill C. Fannin, James Paulsen and Tish Reese segregated Plaintiffs from each other based on disability." (*Id.* ¶ 106.)[4]

- "Defendants Jill C. Fannin, James Paulsen and Tish Reese effectively terminated Ms. Kristina M. Karkanen's parental rights based on disability and sex." (*Id.* ¶ 107.)

While the factual enhancements reveal that plaintiff may have endured a difficult circumstance, the Court cannot discern a viable claim as to the various defendants she names. Moreover, difficulty in navigating state court proceedings, or even being treated unfairly, does not state a claim in these circumstances, even if plaintiff had identified *how* the defendants were biased or unfair.

### 2. *Claim for Disability Discrimination*

Second, and in any event, the disability statutes are not applicable here. Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, as amended and codified at 29 U.S.C. § 701 *et seq.*, prohibit discrimination on the basis of a disability in the programs, services, or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). A plaintiff bears the burden of establishing "the existence of specific reasonable accommodations that [defendants] failed to provide." *Memmer v. Marin Cty. Courts*, 169 F.3d 630, 633 (9th Cir. 1999).

Plaintiff does not explain what accommodations she requested, the dates and details of when and how she made the requests, or what accommodations were denied. Rather, she merely alleges that she was "no[t] *offered* accommodations" such as "aids, pro bono counsel, or other supports" and that she was "refused" accommodations. (OC ¶¶ 41, 46, 103, 122 (emphasis

---

[4] While plaintiff no longer brings this action as next friend of her minor child, J.K., the Court notes that sporadic references to "plaintiffs" remain in the complaint. (*See, e.g.*, ¶¶ 49, 97, 100, 105, 108, 120, 126, 127.)

7

supplied); *see also id*. ¶¶ 42, 101, 105.) The Court understands plaintiff's primary grievance to be that she was entitled to a court-appointed attorney during the pendency of the family court proceedings. Her prayer for relief includes a request that the Court "[e]njoin Defendants . . . from engaging in discriminatory policies and practices against individuals based on their disabilities" and "[o]rder Defendants to modify their policies, practices, and procedures as necessary to bring them into compliance with" Titles II and III of the ADA and Section 504 of the Rehabilitation Act. (OC at ECF p. 31.) This Court does not have the authority to provide federal oversight over state courts' appointment of legal representation in custody cases. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014) (stating that abstention "is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment" (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974); *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2011) (per curiam)); *see also L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) ("We should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system.").

Next, Title III allows claims against *private* individuals or entities for denial of access to public accommodations run by those individuals "on the basis of disability." 42 U.S.C. § 12182(a); *see also Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000). However, none of the events that plaintiff alleges in the OC appears to have taken place in a public accommodation as defined by the statute. *See* 42 U.S.C. § 12181(7).

Because plaintiff fails to allege a cognizable federal claim, the Court need not address plaintiff's state law claims, namely civil harassment pursuant to California Code of Civil Procedure section 527.6. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### 3. *Claim for a HIPAA Violation*

Plaintiff's OC also adds a HIPAA violation claim. Plaintiff brings this claim on the basis that "Defendants have discussed Plaintiff's supposed 'mental illness' and other physical, and/or psychological conditions that Plaintiff suffers from, in open Court, and beyond, without her

express consent." (OC ¶ 73.) According to plaintiff, the "public court record" containing this information was "duplicated and distributed" to various defendants within the Newark Unified School District, who "restricted Plaintiff's access to her child's educational records and falsely accused Plaintiff when she sought to lawfully remove the court documents from Newark's school files." (*Id*. ¶ 74.)

To the extent plaintiff is alleging that any of the defendants breached the confidentiality of her health records or plaintiff's right to access her health information under HIPAA, her claim fails. There is no private right of action under HIPAA. *Webb. v. Smart Document Sols., LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) ("HIPAA itself does not provides for a private right of action . . . ."). HIPAA "specifically indicates that the Secretary of Health and Human Services shall pursue the action against an alleged offender, not a private individual." *Johnson v. Quander*, 370 F. Supp. 2d 79, 100 (D.D.C. 2005) (citation omitted). This means that only the government can bring a claim for violation of HIPAA.

### 4. *Claim for Sex Discrimination*

Plaintiff's OC additionally asserts a claim for "Sex Discrimination Violations of State Constitution." (OC at ECF p. 23.)[5] Plaintiff states that defendants violated Article 1, section 8 of the California Constitution. (*Id*. ¶ 133.)

As the allegations illustrate, plaintiff's sex discrimination claim appears to be intertwined with her disability claim. (*See, e.g.*, ¶¶ 129–132.) Again, the facts of what plaintiff says happened to her, even when liberally construed, do not give rise to a violation of the sex discrimination laws cited. Plaintiff attacks the federal government's "Fatherhood" initiative. (*Id*. ¶ 114.) She alleges:

> Plaintiffs were denied equal access to grants and funds[,] specifically fatherhood funding; second chance funding, access to visitation and reunification programs and funding of other Health and Human Service[s] Programs. Plaintiffs became

---

[5] The OC also cites to Federal Rule of Civil Procedure "5.10." (OC ¶ 140.) The Court concludes this is in error, because Rule 5.10 does not exist, and that plaintiff instead meant to cite to Rule 5.1, "Constitutional Challenge to a Statute." However, from what the Court understands of plaintiff's claims, plaintiff is challenging the way she was allegedly discriminated against in state court. Plaintiff cites Rule 5.10 as a "constitutional challenge to the California Court System." (*Id*.) Because the "California Court System" is not a state or federal statute, it does not appear that Rule 5.1 applies in this case.

9

> sexual discrimination victims of a media campaign regarding fatherlessness, and Parental Alienation which identified men as victims of systematic gender/sex bias while blaming single mothers . . . .

(*Id*. ¶ 140; *see also id*. ¶ 146.) Plaintiff additionally states that "the policy of the State of California, et al[.], and their *modus operandi* is discriminatory against mothers, (particularly against single mothers and victims of domestic violence), as required in order to receive federal grants via the [Fatherhood] initiative. Defendants pit Responsible Fatherhood against the Violence Against Women Act (VAWA) to generate a cyclical need for funding." (*Id*. ¶ 142.) Plaintiff adds that "[t]he courts have become a pay-to-play system valuing attorneys and rule most often against the unrepresented female party. Taking children from mothers after divorce because they are unable to afford representation has become common place [*sic*] especially when abuse is present[.] Such practice is discriminatory and unamerican [*sic*] and surely violates human rights." (*Id*. ¶ 137.)

As an initial matter, it appears that plaintiff has cited the wrong provision of California law. Article I, section 8, of the California Constitution, under which plaintiff is suing, states, "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." However, plaintiff is challenging alleged systematic discrimination in state court against mothers, particularly mothers with disabilities.[6]

Even if plaintiff had cited her sex discrimination claim correctly, she has failed to specify what funding or services fathers are provided that she has not been provided as a mother or that any of these defendants can be held liable for such widespread policies. Again, it appears that she may be alleging that the State of California denied her "full and equal access to court proceedings concerning her parental rights and custody of her minor child" because she was a mother rather than a father. (OC ¶ 129.) As with plaintiffs' disability claim, however, she has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[6] Plaintiff's allegations regarding "EEOC Policies" and "laws enforced by [the] EEOC" are similarly misplaced as plaintiff does not claim that the alleged discrimination occurred *in the course of employment*. (OC ¶¶ 134, 146.)

10

She has not connected the events that she says occurred with any violation of sex discrimination laws.

*5. Additional Defects Regarding Immunity from Suit and Relief Sought*

Plaintiff's OC suffers from numerous additional defects. In its prior order dismissing plaintiff's first amended complaint with leave to amend, the Court noted that plaintiff resorted to improper group pleading. (Dkt. No. 11 at 3.) Courts consistently conclude that a complaint which "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)); *see also, e.g., Fagbohungbe v. Caltrans*, No. 13-cv-03801-WHO, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014 ("The general allegation regarding 'defendants' is [] insufficient on its face because it does not identify *which* specific defendants[.]") (emphasis supplied); *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("Undifferentiated pleading against multiple defendants is improper.") (internal quotation marks omitted).

Here, plaintiff continues to use improper group pleading. As evidenced by certain allegations already referenced herein, plaintiff repeatedly lumps "defendants" together in her allegations. (*See also, e.g.*, OC ¶ 48 ("Defendants perpetuated the use of the 'mental illness' label to prejudice Plaintiff . . . ."); *id*. ¶ 68 ("Defendants exploited Plaintiff's disabilities . . . .); *id*. ¶ 70 ("Plaintiffs allege that Defendants have continuously civilly harassed her . . . .); *id*. ¶ 96 ("Defendants have intentionally discriminated against Ms. Karkanen for having a 'mental illness' that would cause her daughter harm."); *id*. ¶ 103 ("Defendants refused to offer and provide appropriate individualized treatment and accommodations . . . ."); *id*. ¶ 117 ("Defendants have a pattern and practice of using mental health accusations and discriminatory policies . . . ."). Despite plaintiff's improvement in this regard, she did not correct this deficiency entirely when amending her complaint for the second time.

As to certain defendants for whom plaintiff added further detail when amending, the allegations now make clear that they are immune from suits for damages. For instance, plaintiff

11

has added further detail regarding the timeline of events that occurred during the state court proceedings. These allegations show that the Contra Costa County Superior Court judge whom plaintiff is suing, Judge Fannin, was acting pursuant to her judicial capacity. The only events plaintiff describes involving Judge Fannin are actions she took as a judge during state court proceedings, for example by placing information "in a public court record," (*id.* ¶ 74), and making custody rulings, (*id.* ¶¶ 44, 57, 123). A state judge is absolutely immune from civil liability for damages for acts performed in his or her judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553–55 (1967).

Of note, "[j]udicial immunity is not limited to judges. All those who perform judge-like functions are immune from civil damages liability." *Ryan v. Bilby*, 764 F.2d 1325, 1328 n.4 (9th Cir. 1984). Thus, defendant Reese is similarly immune for making custody recommendations as part of her duties as a family court mediator and custody recommending counselor. *See Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1158–59 (9th Cir. 1987) (finding court-appointed counselors immune from suit because "[t]he allegations that [court appointed counselors] refused to allow [plaintiff] visitation rights . . . are not materially different from the allegation that a judge and prosecutor conspired to deprive a prisoner of effective counsel and access to legal materials"); *Todd v. Landrum*, No. 2:12-cv-1770 LKKN KJN PS, 2012 WL 5187836, at *2 (E.D. Cal. Oct. 17, 2012) (citing *Meyers*, noting "[t]he Ninth Circuit Court of Appeals has held that individuals who perform judge-like functions, including those who mediate custody disputes and provide reports to family law courts pursuant to state statute, are entitled to immunity when the events at issue arise from the performance of those duties"). As yet another example, defendant Paulsen is immune from liability for decisions relating to the removal of J.K. from plaintiff's custody, made as part of his duties as a social worker. *See Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456, 466 (2007) ("Several [California] appellate courts . . . have held that a social worker's decisions relating to . . . the investigation of child abuse, removal of a minor, and instigation of dependency proceedings, are discretionary decisions subject to immunity under [Cal. Gov't. Code] section 820.2, and/or prosecutorial or quasi-prosecutorial decisions subject to immunity under section 821.6.") (citations omitted); *Khai*

12

*v. Cty. of L.A.*, 730 F. App'x 408, 410 (9th Cir. 2018) (citing *Jacqueline T.*, holding that social workers were immune from liability for statements made in connection with investigation by Department of Children and Family Services into alleged child abuse).

Finally, the Court is not able to provide certain relief that plaintiff seeks. Specifically, plaintiff seeks an order from the Court to enforce plaintiff's divorce decree of December 15, 2009 and asks for declaratory relief that "[a]ll orders following the original Divorce Decree/Judgment of Divorce dated December 15, 2009 [be] declared void[.]" (OC at ECF p. 32.) From what the Court can understand, plaintiff is in essence asking the Court to reverse prior orders of the Contra Costa County Superior Court awarding child custody to plaintiff's former spouse and to award custody to plaintiff instead. This Court cannot enter such an order. Federal district courts, as courts of original jurisdiction, may not review the final determination of state courts. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923) (district courts may not exercise appellate jurisdiction over state courts). Accordingly, the *Rooker-Feldman* doctrine bars an action in which a party essentially asks the federal court to review the state court's decision and afford that party the same remedy he or she was denied in state court. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (noting "*Rooker-Feldman* is a powerful doctrine that prevents courts from second-guessing state court decisions"). The *Rooker-Feldman* doctrine applies even when the state court judgment is not issued by the highest state court, *see Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986), and when federal constitutional issues are at stake, *see Branson v. Nott*, 62 F.3d 287, 291–92 (9th Cir. 1995).

The Court acknowledges plaintiff's plights: Plaintiff has stated that custody of her child was given to an abusive father, that Molaug was represented by counsel at times when plaintiff was not, and that she either has, or was perceived as having, a disability that was the basis for discrimination against her, both for her disability and because she is a mother and/or a woman. Nevertheless, the Court is unable to resolve plaintiff's situation. The Court has described above the numerous deficiencies in plaintiff's OC and why it cannot allow this case to move forward in

federal court.  Further leave to amend will not be granted because it would be futile; the Court already identified in its prior order the deficiencies in plaintiff's complaint.  (*See generally* Dkt. No. 11.)[7]  The OC either does not address these deficiencies, or the detail provided shows that plaintiff has no claim.

### B. Plaintiff's Renewed Request for Legal Counsel

Plaintiff has also filed a renewed request for legal counsel as an accommodation for her disability.  The Court understands that *pro se* litigants face significant challenges in pursuing their cases, even more so where the litigant, as plaintiff describes herself, has a disability that inhibits his or her ability to communicate effectively and participate in the proceedings fully.  Nevertheless, as the Court has explained on numerous occasions (*see* Dkt. Nos. 11, 14, 17, 19), the law does not provide for the right to counsel in civil cases for *pro se* litigants.  *See United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986) ("There is normally . . . no constitutional right to counsel in a civil case.").

Moreover, plaintiff's request for legal counsel requires, in part, that the Court consider the likelihood of success on the merits.  *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (affirming district court's denial of *pro se* litigant's motion for request of counsel because he had "neither demonstrated a likelihood of success on the merits nor shown that the complexity of the issues involved was sufficient to require designation of counsel").  As demonstrated above, the Court has spent significant time on plaintiff's case and has given plaintiff all the inferences it can with respect to the facts alleged.  Nonetheless, the Court finds that a basis does not exist upon which plaintiff's lawsuit is likely to succeed.  Plaintiff's renewed request for legal counsel is thus **DENIED**.[8]

---

[7] Even though the Court is evaluating plaintiff's HIPAA, civil harassment, and sex discrimination claims for the first time, this does not change the Court's ruling.  With respect to the HIPAA claim, the Court reiterates that there is no private right of action under HIPAA.  (*See supra* at p. 9.)  As for the latter two claims, they are state law claims and cannot serve as a basis for this Court's jurisdiction over the matter.

[8] To the extent plaintiff requests that this Court make other accommodations, such as provide "interpreters or other appropriate auxiliary aids and services," (Request at ECF p. 1), such request is **DENIED** for the same reason.

14

## IV. CONCLUSION

For the reasons set forth above, the Court **DISMISSES** plaintiff's OC without leave to amend and **DENIES** plaintiff's renewed request for legal counsel. This action is terminated.

The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: August 10, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**